UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
UNITED STATES OF AMERICA         :
:
         -v.-             :    11 Cr. 347 (DLC)
:
RALPH ESMERIAN,                  :
:
         Defendant.      :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**GOVERNMENT'S MEMORANDUM REGARDING THE
RESTITUTION OBLIGATIONS OF DEFENDANT RALPH ESMERIAN**


                PREET BHARARA
                United States Attorney for the
                Southern District of New York
                Attorney for the United States
                    of America

DAVID B. MASSEY
NICOLE W. FRIEDLANDER
Assistant United States Attorneys

    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :

UNITED STATES OF AMERICA        :

             -v.-                    :      11 Cr. 347 (DLC)

RALPH ESMERIAN,              :

             Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### GOVERNMENT'S MEMORANDUM REGARDING THE RESTITUTION OBLIGATIONS OF DEFENDANT RALPH ESMERIAN

On July 22, 2011, this Court sentenced Ralph Esmerian to 72 months' imprisonment; three years of supervised release; $20,000,000 in forfeiture; and a special assessment of $300. Pursuant to 18 U.S.C. § 3664(d)(5), the Court adjourned its imposition of a restitution order to permit the Government additional time to submit its position on the appropriate restitution amount. We do that now.

We note at the outset that Esmerian and the four victims described below consent to the entry of a restitution order in the total amount of $22,541,049, divided among the victims as described below.

**A.    Esmerian's Plea**

On April 15, 2011, the Government filed an Information charging Esmerian in three counts. Count One charged the defendant with bankruptcy fraud, in violation of 18 U.S.C. §§ 157(3) and 2. Count Two charged the defendant with concealment of assets belonging to the estate of a debtor, in violation of 18 U.S.C. §§ 152(1) and 2. Count Three charged the defendant with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. It is undisputed that the Mandatory

Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"), applies to these offenses.

On April 15, 2011, Esmerian pled guilty to all three counts of the Information. His plea agreement dated April 1, 2011 contained a stipulation that "the loss resulting from the conduct charged in Counts One through Three of the Information was more than $20,000,000, but not more than $50,000,000[.]"

**B.     Applicable Law**

The MVRA provides that, regardless of a defendant's economic circumstances, the court, in its order of restitution, "shall order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A). See United States v. Coriaty, 300 F. 3d 244, 253 (2d Cir. 2002) (observing "the statutory focus on the victim's losses and upon making victims whole"). Restitution may only be ordered "for losses that [were] . . . directly caused by the conduct composing the offense of conviction," United States v. Silkowski, 32 F.3d 682, 689 (2d Cir.1994), and then, only for the victim's "actual loss," United States v. Germosen, 139 F.3d 120, 130 (2d Cir.1998); see also United States v. Carboni, 204 F.3d 39, 47 (2d Cir.2000). Actual loss is defined under the Sentencing Guidelines as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S. Sentencing Guidelines Manual § 2B1.1, cmt. n. 3(A)(i) (2010). Reasonably foreseeable pecuniary harm means harm "that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." Id. n. 3(A)(iv).

The Government bears the burden of demonstrating the loss amount sustained by the victim as a result of the offense. 18 U.S.C. § 3664(e). Any dispute as to the proper amount or type of restitution is to be resolved by the Court by the preponderance of the evidence. Id.

2

"Findings of the amount of loss may be based upon reasonable estimates." United States v. Agate, 613 F. Supp.2d 315, (E.D.N.Y. 2009) (citing United States v. Uddin, 551 F.3d 176, 180 (2d Cir. 2009)); United States v. Fogel, 494 F. Supp.2d 136, 138-39 (D. Conn. 2007) (accepting restitution methodology that "reasonably approximate[d]" the actual loss). At the same time, however, a restitution award must be based on "more than mere speculation about a victim's actual loss." United State v. Donaghy, 570 F. Supp. 2d 411, 423 (E.D.N.Y. 2008).

The process of determining restitution is not intended to, and should not, overwhelm the sentencing proceeding itself. The MVRA explicitly provides that, not only may courts employ reasonable approximations to calculate restitution, but also that courts need not impose restitution at all if the calculations would require unduly complicated determinations of fact. MVRA § 3663A(c)(3). Thus, the Second Circuit has observed: "Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof, as it provided that the MVRA is to be inapplicable if the court finds that the determination of complex factual issues related to the cause or amount of the victims' losses would unduly burden the sentencing process." Reifler, 446 F.3d at 137; see also United States v. Amato, 540 F.3d 153, 160 (2d Cir. 2008) (same).

**C.    Discussion**

    **1.    The Victims**

Four victims have made submissions to the Court in connection with this case:

- Merrill Lynch Mortgage Capital Group, Inc. ("Merrill Lynch") (see Letter from Howard Hawkins (Counsel for Merrill Lynch) to the Honorable Denise Cote, July 13, 2011 ("Merrill Lynch Letter to the Court");

- Fred Leighton Holdings Inc. Liquidation Trust ("FLHI Liquidation Trust") (see Letter from Gail R. Zweig to the Honorable Denise L. Cote, July 13, 2011) ("FLHI Letter to the Court)";

- Stewardship Credit Arbitrage Fund, Ltd., Stewardship Credit Arbitrage Fund, LLC, and Northlight Fund, LP (hereinafter, "Acorn Successors") (see Letter from Joseph C. Corneau (Counsel for Acorn Capital Group LLC successors) to Wendy Olsen, June 23, 2011) ("Acorn Letter");

- Joshua-Jericho Associates LLC (See Letter from Gary Stein (Counsel for Joshua-Jericho Associates et al.) to Wendy Olsen, July 15, 2011 ("Joshua-Jericho Letter to the Court").

The letters from each of these entities, together with a related letter from the United States Trustee's Office (see Letter to the Honorable Denise L. Cote from Serene Nakano, Trial Attorney, Office of the United States Trustee for the Southern District of New York, July 8, 2011), are attached hereto as Exhibit A.

As a practical matter, there are only three entities that must receive restitution because, for purposes of restitution in this case, Merrill Lynch and FLHI Liquidation Trust have agreed to be treated as the same victim. As a result of the Fred Leighton bankruptcy proceeding (In re: Old Delaware Jewels, Inc., No. 08-11363 (RDD) (hereinafter, the "Fred Leighton Bankruptcy Proceeding")), through which Esmerian defrauded Merrill Lynch, the FLHI Liquidation Trust is the entity that holds all claims of the Fred Leighton estates, for the benefit of Merrill Lynch, its sole beneficiary. Counsel for FLHI Liquidation Trust, Gail Zweig, Esq., has advised the Government that FLHI Liquidation Trust entirely cedes its interest in restitution in this case to Merrill Lynch for ease of administration, in part because the Trust is expected to dissolve when its business is complete. Accordingly, the proposed restitution order attached hereto as Exhibit A awards no restitution to FLHI Liquidation Trust.

**2.    Restitution Awards**

Based on extended discussions with Esmerian and the four victims described above, the Government respectfully submits that the Court should enter an order of restitution in the total amount of $22,541,049, divided as follows:

| Name of Victim | Address of Victim (Counsel) | Amount of Restitution |
|---|---|---|
| Merrill Lynch Mortgage Capital Inc. | c/o Howard R. Hawkins, Jr., Esq. Cadwalader, Wickersham & Taft One World Financial Center New York, NY 10281 T: (212) 504-6000 | $18,170,524.50 |
| Stewardship Credit Arbitrage Fund, Ltd., Stewardship Credit Arbitrage Fund, LLC, and Northlight Fund, LP (Successors to Acorn Capital Group LLC) | c/o Joseph C. Corneau, Esq. Klestadt & Winters, LLP 570 Seventh Avenue, 17th Floor New York, NY 10018 T: (212) 972-3000 | $3,170,524.50 |
| Joshua/Jericho Associates, LLC | c/o Gary Stein, Esq. Schulte Roth & Zabel LLP 919 Third Avenue New York, NY 10022 T: (212) 756-2000 | $1,200,000 |
| | TOTAL | $22,541,049 |

The Government respectfully submits that such an order would fairly compensate the victims based on reasonable estimates of the losses that they suffered as a direct result of Esmerian's offenses in this case.

    **a.    Merrill Lynch: $18,170,524.50**

As the Court is aware, Esmerian's fraud against Merrill Lynch occurred in connection with approximately $177 in loans that he obtained from Merrill Lynch. Beginning in June 2006

and thereafter, without notice to Merrill Lynch, Esmerian sold and double-pledged collateral previously pledged to Merrill Lynch to third parties for the purpose of, among other things, obtaining other loans, including a $40 million loan from the hedge fund Acorn Capital Group. Specifically, in connection with loans of approximately $40 million by Acorn to REI (the "Acorn Loan"), on December 15, 2006 and December 17, 2007, Esmerian pledged approximately six items of Merrill Lynch collateral to Acorn. In connection with the Acorn Loan, Esmerian falsely represented and warranted to Acorn that Esmerian, REI and/or other Esmerian-related entities owned these six items of jewelry free and clear of any and all liens or claims of others. This was false because, in fact, Esmerian had pledged the same items to Merrill Lynch based on a historical cost value of $6,341,049. The Government respectfully submits that it is appropriate to divide the loss for this double-pledging equally between Merrill Lynch and the Acorn Successors, such that each are awarded $3,170,524.50 in connection with this transaction. Counsel for the Acorn Successors, Merrill Lynch, and FLHI Liquidation Trust consent to this calculation for purposes of restitution in this case.

  The Government respectfully submits that Merrill Lynch should be awarded an additional $15 million (for a total of $18,170,524.50) as a reasonable estimate of other losses that it suffered as a direct result of the offenses described in the Information and the Government's Sentencing Memorandum dated July 20, 2011. As the Court is aware, after Esmerian caused Fred Leighton and several related entities to file for bankruptcy protection in April 2008, Esmerian repeatedly embezzled Merrill Lynch collateral, sold it, and stole the proceeds. The precise calculation of the all the losses resulting from this conduct would entail further costly and time-consuming investigation and litigation concerning, among other things, precise valuation of the stolen

collateral that is described in the Information and the Government's Sentencing Memorandum, as well as the whereabouts and valuation of numerous additional pieces of Merrill Lynch collateral that are not included in the Information but are still missing. In addition, even among the dozens of collateral items described in the Information, there are many possible data points for fair market value: appraisals at the time of the Merrill Lynch loans; Esmerian's representation to Merrill Lynch of the historical cost of the items; the prices at which Esmerian sold certain items at a steep discount when he was desperate to raise cash; appraisals conducted in or about 2008; and appraisals conducted in 2010 and 2011. It would be needlessly complicated and burdensome on the parties and the Court to resolve all these issues with precision; therefore, the Government respectfully submits that an award of $18,170,524.50 to Merrill Lynch (including its $3,170,524.50 share of the Acorn double-pledged items) would constitute a reasonable estimate of Merrill Lynch's losses under the circumstances, including the fact that Esmerian has a negative net worth of more than $200 million. For purposes of restitution in this case, Merrill Lynch and FLHI Liquidation consent to this calculation. Esmerian also consents to this calculation.

Accordingly, the restitution order should award $18,170,524.50 to Merrill Lynch.

      **b.**     **Acorn Successors: $3,170,524.50**

As described above, the Acorn Successors are victims of the double-pledging of six items between the Merrill Lynch loans and the Acorn Loans. The Government respectfully submits that the appropriate restitution share to the Acorn Successors arising from this conduct is $3,170,524.50. For purposes of restitution in this case, the Acorn Successors, Merrill Lynch, and the FLHI Liquidation Trust consent to this award to the Acorn Successors.

In the Acorn Successors' letter to the Court dated June 23, 2011, the Acorn Successors state that Esmerian owes them more than $59,636,953 in connection with the Acorn Loans. The Acorn Successors further state that the appraised values of the collateral that was used to secure the loans were hugely inflated. Acorn Letter at 2. The Government does not believe that the Acorn Successors are entitled to restitution in the amount of $59,636,953 because the losses that Acorn suffered as a result of Esmerian's default on the Acorn Loans was not "directly caused by the conduct composing the offense of conviction," United States v. Silkowski, 32 F.3d 682, 689 (2d Cir.1994), and therefore not eligible for restitution. The Information did not charge Esmerian with inflating the value of the collateral in the Acorn Loan or with fraud in connection with the Acorn Loans other than the double-pledging of collateral between the Acorn and Merrill Lynch loans.

Accordingly, the appropriate amount of restitution for Acorn is its 50 percent share of the loss resulting from the double pledging of the six Acorn items: $3,170,524.50.

        **c.**        **Joshua-Jericho Associates: $1,200,000**

As described in the Information and the Government's Sentencing Memorandum, in December 2008, Esmerian created a forged invoice to induce the CFO of Fred Leighton to wire the proceeds of the sale of the JAR Butterfly Brooch to Omnis Industries, which Esmerian controlled, rather than to the owner of the JAR Butterfly Brooch, Joshua-Jericho Associates. As a direct result of this fraudulent transfer, Joshua-Jericho Associates suffered losses in the amount of $1.2 million.

Accordingly, the Government respectfully submits that the restitution order should include an award to Joshua-Jericho Associates in the amount of $1.2 million. Joshua-Jericho

Associates and Esmerian consent to this calculation.

### 3. Payment Schedule

Given Esmerian's negative net worth, "the economic circumstances of the defendant . . . do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable restitution schedule[.]" 18 U.S.C. 3664(f)(3)(B).  Accordingly, the Government respectfully requests that the restitution order "direct[s] the defendant to make nominal periodic payments" under the order.  Id.  Such a provision is included in the attached proposed Order in paragraph two.  Esmerian objects to paragraph two.

The Order should also require the defendant to "notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution." 18 U.S.C. 3664(k).  The attached proposed Order includes this provision in paragraph 3.  Esmerian objects to paragraph three.  (But, to be clear, Esmerian consents to paragraph one of the proposed Order and the Schedule of Victims attached to the Order).

                                       Respectfully submitted,

                                       PREET BHARARA
                                       United States Attorney

By:_____
    David B. Massey
    Nicole W. Friedlander
    Assistant United States Attorneys

cc:    Patricia Pileggi, Esq. (counsel to Ralph Esmerian)
       Howard Hawkins, Esq. (counsel for Merrill Lynch Mortgage Capital Inc.)
       Gail Zweig, Esq. (counsel for FLHI Liquidation Trust)
       Gary Stein, Esq. (counsel for Joshua-Jericho Associates LLC)
       Joseph C. Corneau (Counsel for Acorn Successors)

# Exhibit A

# Exhibit B